IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03254-GPG-KAS

LEE MOORER, Dr.,

    Plaintiff,

v.

NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Plaintiff Lee Moorer's oral **Motion to Compel Production of Unredacted Documents from Defendant Nationwide's Claim File**. The Court held a discovery dispute hearing on this and other issues on September 22, 2025. *Courtroom Minutes* [#46]. The Court ruled on all issues but took this one under advisement to allow for *in camera* review of the at-issue documents, which have been withheld on attorney-client privilege, work product, and relevance grounds. *See id*. At the discovery hearing's conclusion, defense counsel provided the Court with a binder containing documents for *in camera* review. Also pursuant to court order, Plaintiff's counsel emailed to chambers an amended dispute chart focusing on the *in camera* documents, and both parties emailed produced communications relevant to the statute of limitations and to the issue of when a substantial probability of litigation arose. The Court has reviewed the record from the September 22, 2025 hearing, the parties' post-hearing submissions, Defendant's privilege log, Plaintiff's Amended Discovery Dispute Chart, the

*in camera* documents, and the applicable law. For the reasons discussed below, Plaintiff's oral Motion to Compel is **GRANTED in part** and **DENIED in part**.

## I.  Background

This insurance coverage dispute, which is pending in this District on diversity jurisdiction grounds, arises from an October 10, 2019 motor vehicle collision involving Plaintiff and a nonparty tortfeasor. Following the collision, Plaintiff settled his claim with the nonparty. A few years after the collision, Plaintiff submitted a policy limit demand to Defendant Nationwide, through which Plaintiff had uninsured/underinsured motorist coverage. Defendant investigated Plaintiff's claim and denied the claim on October 23, 2024. On November 5, 2024, Plaintiff filed suit in Colorado District Court, *see Compl.* [#4], and Defendant subsequently removed the case. *See Notice of Removal* [#1]. Plaintiff lodges claims for (1) breach of contract; (2) common law bad-faith breach of contract in violation of Colo. Rev. Stat. § 10-3-1104; and (3) unreasonable delay and denial in violation of Colo. Rev. Stat. §§ 10-3-1115 and 1116.

## II.  Legal Standards

The Federal Rules of Civil Procedure permit parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering factors including "the parties' relative access to relevant information" and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).

In this diversity suit, Colorado law, as the law of the forum, governs issues regarding the scope of the attorney-client privilege. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995); *see also* FED. R. EVID. 501. "The privilege extends to

2

confidential communications by or to the client in the course of gaining counsel, advice, or directions with respect to the client's rights or obligations." *Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 541 (Colo. 1989).

While a party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," *i.e.*, work product-protected materials, "those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Federal Rule of Civil Procedure 37(a)(3)(B), permits a party seeking discovery to move for an order compelling production of information if a party fails to produce documents.

Federal law governs work product privilege issues that arise in federal court, even in diversity cases such as this. *See Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (referencing Fed. R. Civ. P. 26(b)(3)); *see also Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL 6119962, at *12 (D. Colo. Oct. 15, 2020). To establish work-product protection, Defendant Nationwide bears the burden of establishing that the materials sought to be protected are documents or tangible things that were prepared in anticipation of litigation or for trial. *E.E.O.C. v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Id*. (quoting *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)).

3

To determine whether documents were prepared in anticipation of litigation, courts consider "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993) (citing 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2024); *Ownby v. United States*, 293 F. Supp. 989 (W.D. Okla. 1968)); *see also Menapace*, 2020 WL 6119962, at *13.

Two kinds of protected work product exist: (1) fact work product; and (2) opinion work product. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig*, No. 01-cv-01451, 2005 WL 7987529, at *2 (D. Colo. Aug. 15, 2005). "Fact work product" consists of "materials generated by attorneys that are not opinion work product; *e.g.*, witness statements, investigation reports, photographs, diagrams, and charts prepared in anticipation of litigation for trial preparation." *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 626 (N.D. Okla. 2009); *see also Qwest Commc'ns*, 2005 WL 7987529, at *4 (concluding that attorney notes made during an investigative interview, which were made to record and preserve witness statements through direct quotes or paraphrasing—without including attorney's mental or thought processes—constitute fact work product).

Opinion work product includes "memoranda analyzing law or fact, trial strategy, strengths and weaknesses of a case, legal theory, and the application of the law to the facts (but not bare facts or legal theory alone); selections or compilations of documents or data which reveal counsel's thought processes; and attorney notes of witness interviews." *Tyson Foods, Inc.*, 262 F.R.D. at 626.

4

The "substantial need/undue burden test [in Fed. R. Civ. P. 26(b)(3)(A)] applies . . . to fact work product," and it "encourages attorneys to prepare thoroughly for trial without fear that their thoughts and efforts will be disclosed to an opponent." *Frontier Refin.,* 136 F.3d at 704 n.12. Opinion work product, however, is subject to protection akin to "absolute protection." *Qwest Commc'ns*, 2005 WL 7987529, at *2; *accord Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (concluding that the "substantial need" and "without undue hardship" test does not apply to opinion work product).

### III. Analysis

This discovery dispute arises from Defendant Nationwide's production of dozens of pages of the claim file with redactions. Defendant contends that the redactions concern protected work product because they consist of communications made after a substantial probability of litigation arose. Defendant proposes four different dates for when litigation because substantially probable. First, Defendant appears to contend that litigation became substantially probable in August 2022, when it commenced adjusting Plaintiff's claim because Plaintiff had already retained counsel. Second, Defendant contends that litigation became substantially probable on February 27, 2024, when Plaintiff's counsel threatened to file suit if the claim was not paid in 30 days. *Hr'g Audio* 1:42:57-1:43:08. Third, Defendant argues that litigation became substantially probable on May 29, 2024, when Plaintiff first raised a concern about the speed of the claims adjusting given the anticipated running of the statute of limitations in a few months. *Id*. at 1:43-08-1:43:14. Fourth, Defendant argues that litigation became substantially probable on October 1, 2024, when Plaintiff again raised the statute of limitations issue and proposed that the parties enter into a tolling agreement. *Id*. at 1:43:14-1:43:19. Defendant also contends

5

that some of the redactions concern attorney-client privileged communications because they concern communications between its claim representatives and its outside counsel.

Plaintiff on the other hand contends that litigation did not become substantially probable until October 23, 2024, when Defendant denied Plaintiff's claim. Thus, Plaintiff argues that most of the redactions do not concern work product. Additionally, Plaintiff argues that the attorney-client privilege does not apply to the withheld communications with attorneys whom Defendant retained to investigate and adjust the claim.

### A.   When did a substantial probability of litigation arise?

"[A] substantial part of an insurance company's business is to investigate claims made by an insured against the company or by some other party against an insured"; therefore, such investigations are presumed to be "part of the normal business activity of the company" and documents generated during that activity "are [deemed] ordinary business records as distinguished from trial preparation materials." *Hawkins v. Dist. Ct.*, 638 P.2d 1372, 1378 (Colo. 1982) (quoted in *Menapace*, 2020 WL 6119962, at *14). Of course, circumstances may arise where "an insurance company's investigation of a claim . . . shift[s] from an ordinary business activity to conduct 'in anticipation of litigation,'" but no bright line delineating the shift exists. *Hawkins*, 638 P.2d at 1378 (quoted in *Menapace*, 2020 WL 6119962, at *14). Thus, an "insurance company has the burden of demonstrating that the document that was prepared or obtained in order to defend the specific claim which already had arisen and" a "substantial probability" of litigation over the claim existed "when the documents were prepared or obtained." *Id.* at 1379 (quoted in *Menapace*, 2020 WL 6119962, at *14).

Just as an insurance company's investigation of a claim may shift from ordinary business activity to conduct in anticipation of litigation, so may an attorney's role shift.

6

Consequently, the work product doctrine does not protect communications from a lawyer to an insurance carrier when the lawyer acts in an investigative capacity rather than as a counselor of the law. *See Menapace*, 2020 WL 6119962, at *5 (discussing *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App. 1998)); *see also id*. at *10 (noting consistent findings among courts "that, even where an attorney's involvement crosses the line into the role of claims adjuster, communications between the attorney and the insurer involving legal advice regarding the claim are still protected").

Based on the Court's *in camera* review of the claim file, the Court concludes that Defendant has not met its burden of establishing that the entire claim file's contents were prepared in anticipation of litigation or for trial.

At the outset, the Court considers when litigation over Plaintiff's claim became substantially probable. The Court rejects Defendant's argument that litigation became substantially probable as early as August 2022, when the claims adjusting phase began. While an insured's submission of a claim "almost always" creates "the potential for litigation," courts have consistently "rejected the argument that 'any investigation undertaken by the insurer and all associated documents are made in anticipation of litigation[.]" *Menapace*, 2020 WL 6119962, at *14 (quoting *Hill v. W. Door*, No. 04-cv-00332-REB-CBS, 2005 WL 8171443, at *3 (D. Colo. Aug. 1, 2005) (collecting cases)). To hold otherwise "would 'improperly 'allow an insurance company to insulate all investigative materials generated in every case involving serious injuries long before any coverage decisions are made or threats of litigation arise.'" *Id*. (quoting *Cornhusker Cas. Co. v. Skaj*, No. 11-CV-100-S, 2012 WL 12541136, at *2 (D. Wyo. Apr. 5, 2012)).

7

Similarly, the Court rejects any argument by Defendant that litigation became substantially probable simply because Plaintiff retained counsel in September 2022, or sometime prior. "It is neither unusual nor indicative of an intent to pursue litigation that Plaintiff retained counsel to handle his insurance claims[.]" *Menapace*, 2020 WL 6119962, at *16 (citing *Church Mut. Ins. Co. v. Coutu*, No. 17-cv-00209-RM-NYW, 2018 WL 2388555, at *5 (D. Colo. May 25, 2018) (finding that "[t]he mere retention of counsel is . . . insufficient to establish a reasonable anticipation of litigation[.]")).

Next, the Court considers whether a substantial probability of litigation arose on May 29, 2024, when Plaintiff's counsel wrote to Defendant's counsel expressing concern about delays in scheduling Defendant-requested medical examinations, given the approaching November 2024 statute of limitations deadline on Plaintiff's underinsured motorist claim. *See R. Ziev-I. Mitchell Letter (dated May 29, 2024)*, NWM_4948-4949; *see also R. Ziev-I. Mitchell Letter (dated Oct. 1, 2024)*, NWM_4893 (articulating a November 14, 2022 statute of limitations deadline). Mere discussion of the statute of limitations does not make litigation substantially probable. The records reflect that more than four months later, on October 1, 2024, Plaintiff did not want to commence litigation. *See R. Ziev-I. Mitchell Letter (dated Oct. 1, 2024)*, NWM_4893 (stating, Plaintiff did not "want[] to be forced into a position where he has to file a lawsuit in order to preserve the statute of limitations."). Instead, Plaintiff's counsel proposed to Defendant's counsel that the parties "consider a tolling agreement so that [Plaintiff] is not forced into litigation." *Id*. Even the mention of a tolling agreement does not make litigation substantially probable. *See Lakeshore Vill. Homeowners Ass'n v. Gen Star Indem. Co.*, 22-cv-02046-GPG-SBP, 2024 WL 5125246, at *12 (D. Colo. Dec. 16, 2024) (finding that "HOA's requests for a

8

tolling agreement did not make litigation foreseeable" because a tolling agreement serves "to extend the statute of limitations and provide additional time before a party must file suit."). The Court thus finds that substantial probability of litigation did not exist on May 29, 2024, or even on October 1, 2024.

However, the Court finds that litigation became substantially probable a few weeks later, on October 23, 2024, when Defendant denied Plaintiff's claim. *See Nationwide-R. Ziev Letter* (dated Oct. 23, 2024) (denying claim), NWM_4929-30; *see Menapace*, 2020 WL 6119962, at *17-19 (declining to apply work product protection to documents created prior to a denial-of-coverage letter) (citing *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct.*, 718 P.2d 1044, 1048 (Colo. 1986) (concluding that litigation arose "*after* [the insurer] denied the claim") (emphasis in original); *Century Sur. Co. v. Smith*, No. 14-cv-00947-RM-MJW, 2014 WL 7666061, at *6 (D. Colo. Jan. 21, 2014) ("Ordinarily, the date a claim is denied is the most obvious point at which litigation becomes imminent.")). Therefore, the Court concludes that claim file documents prepared before October 23, 2024, were not prepared in anticipation of litigation or for trial. *See Outback Steakhouse*, 251 F.R.D. at 610. Accordingly, claim file documents that predate October 23, 2024, may not be withheld on work product grounds.

**B.   Has Defendant appropriately redacted certain pre-October 23, 2024 documents?**

Next, the Court considers whether Defendant has appropriately redacted information to protect attorney-client privileged communications or work product or on relevance grounds.

9

1. **Mark Van Dieren/Dyan McDowell Claim File Entries, NWM_303-04, 856-57**

The pages Bates stamped NWM_303-04 and 856-57 are claims file entries dated October 3, 2024, through October 12, 2024, apparently made by the claim adjuster and claim manager. The entries concern claim-adjusting status and strategy. These pages also include an email between the claim adjuster and Ian Mitchell, an attorney retained to assist with the fact investigation and other claim adjusting activities. *See I. Mitchell-A. Dubberstein Email (dated Oct. 1, 2024)*, NWM_4884 (stating that Attorney Mitchell's "firm has been retained to assist Nationwide with their contractual rights including fact gathering, scheduling exams, and coordination of requests for expert reports and opinions."). The email does not contain legal advice or a request for legal advice. The email, rather, consists of updates regarding the status of the investigation, asks Attorney Mitchell to obtain additional information from Plaintiff's counsel to facilitate claim adjusting, and articulates an internal approval process for any research that may be conducted on the statute of limitations issue.

Defendant has redacted these pages on grounds of attorney-client privilege, work product, and relevance. *Def. Suppl. Privilege Log* at 1-2. The Court finds that none of these bases justify redactions. First, these claim entries do not seek or contain legal advice. Second, these claim entries predate the October 23, 2024 denial letter. Third, the Court finds that this claim-handling communication has at least some relevance to the asserted claims and defenses in this case. Plaintiff has lodged a breach of contract claim, which challenges Defendant's "ultimate decision whether a policy covers an alleged injury or damage[.]" *Lakeshore Vill.*, 2024 WL 5125246, at *8. Plaintiff has also lodged a bad faith claim which "places at issue how the insurer arrived at its decision." *Id*. Finally,

10

Plaintiff has lodged a statutory claim for unreasonable delay or denial of benefits in violation of Colo. Rev. Stat. §§ 10-3-1115(1)(1)(A) and 10-3-1116(1). For that claim, Plaintiff must establish that "the delay or denial was without a reasonable basis." *Byron-Amen v. State Farm Auto. Ins. Co.*, No. 21-cv-02364-NYW, 2022 WL 1567563, at *4 (D. Colo. May 18, 2022) (citation omitted). Given the broad construction of relevance in the discovery context, these claim file entries are discoverable. Therefore, Defendant is **ordered** to produce NWM_303, 304, 856, and 857 without redactions.

### 2. Dyan McDowell Entries, NWM_305-08, 858-61

The pages Bates stamped NWM_305-08 and NWM_858-61 are claims file entries from October 3, 2024, and thus predate the denial letter and are therefore not work product. The bottom of NWM_305, 858 through the top of NWM_308, 861 contains an email from Attorney Mitchell to the claim adjuster. Defendant has redacted these pages on grounds of attorney-client privilege, work product, and relevance. *Def. Suppl. Privilege Log* at 2. The first redacted paragraph does not contain legal advice; rather, it pertains to information obtained in the claim adjusting-related investigation. The Court finds that this claim-handling communication has at least some relevance to the asserted claims and defenses in this case. Therefore, Defendant is **ordered** to unredact this paragraph.

The next redacted paragraph, from the bottom of NWM_305 through the top of NWM_306 and on NWM_859, consists of legal advice regarding the statute of limitations issue. Even though this communication arises in the claim adjusting phase, it is an attorney-client privileged communication. *See Menapace*, 2020 WL 6119962, at *7 (reasoning, "communications related to the actual provision of legal advice are still protected by the attorney-client privilege," even if the attorney was retained to perform

11

claim adjusting activities); *cf. Olsen v. Owners Ins. Co.*, No. 18-cv-1665-RM-NYW, 2019 WL 2502201, at *1, *5-7 (D. Colo. June 17, 2019) (finding that attorney-client privilege did not apply to claim file communications between adjuster and attorney where the communications did not contain legal advice); *Plaza Ins. Co. v. Lester*, No. 14-cv-01162-LTB-CBS, 2015 WL 3528336, at *5-6 (D. Colo. June 4, 2015) (parsing out legal advice from communications directing law firm to take certain investigative steps and that otherwise lack legal content). Therefore, the paragraph starting at the bottom of NWM_305 through the top of NWM_306 and on NWM_859 is appropriately redacted.

The remainder of the redacted claim file notes on NWM_306, 859 through the top of NWM_308, 861 do not contain legal advice, even though they are part of a communication between Attorney Mitchell and the claim adjuster. The redactions, rather, concern updates from Attorney Mitchell regarding developments in the investigation, including conferrals with an expert regarding Plaintiff's expert's analyses. The redactions also concern Attorney Mitchell's recommended next steps in the investigation. Because these notes do not contain legal advice, Defendant is **ordered** to unredact those paragraphs.

Finally, the last two redacted paragraphs on NWM_308 and the last redacted paragraph on NWM_861 are from an email from Attorney Mitchell to the claim adjuster. The second-to-last redacted paragraph on NWM_308 explains the nature of an attached communication Attorney Mitchell received from Plaintiff's counsel. That paragraph does not contain legal advice. Therefore, Defendant is **ordered** to unredact that paragraph.

In contrast, the last redacted paragraph on NWM_308 and the last redacted paragraph on NWM_861 are appropriately redacted. Those paragraphs contain Attorney

Mitchell's explanation as to why, based on his understanding of the law, he finds Plaintiff counsel's assertions about the statute of limitations puzzling, and he articulates a need for legal research. Because the last redacted paragraph on NWM_308, 861 contain attorney-client privileged information, *see Trujillo*, 144 P.3d at 542, the Court concludes that it is appropriately redacted.

### 3. Dyan McDowell Entries, NWM_313-14, 866-67

The pages Bates stamped NWM_313-14 and NWM_866-67 consist of a September 4, 2024 claim file entry by the claim adjuster. Defendant has redacted these pages on grounds of attorney-client privilege, work product, and relevance. *Def. Suppl. Privilege Log* at 3. But the entry is not a privileged communication; rather, it is an update on the claim adjusting progress and it includes expected due dates for outside expert reports. Additionally, the entry predates the denial letter and is therefore not work product. Finally, the entry is relevant to the asserted claims and defenses in this case. Therefore, Defendant is **ordered** to unredact NWM_313-14 and NWM_866-67.

### 4. Mark Van Dieren & Sladjana Maalouf Entries, NWM_339-40, 892-93

The top of pages Bates stamped NWM_339 and NWM_892 consist of a February 28, 2024 entry from the claim manager about a strategy discussion with Attorney Mitchell regarding the claim status and next steps. Defendant has redacted this entry on grounds of attorney-client privilege, work product, and relevance. *Def. Suppl. Privilege Log* at 3. First, the entry does not contain any attorney-client privileged information; rather, it concerns a meeting the claim manager had with the attorney retained to assist with claim adjusting. Second, though the entry notes Plaintiff's counsel's threats of litigation if the policy limits are not paid within 30 days, the entry predates the October 23, 2024 denial letter by nearly eight months. Therefore, the entry does not contain work product. Finally,

the entry is relevant to the asserted claims and defenses in this case. Therefore, Defendant is **ordered** to unredact the first redacted paragraph on NWM_339 and NWM_892.

The remaining redactions on NWM_339 and NWM_892 are of a February 27, 2024 entry by a claim adjuster regarding an email the adjuster sent to Attorney Mitchell with a request to discuss a claim resolution strategy. Defendant has redacted this entry on grounds of attorney-client privilege, work product, and relevance. *Def. Suppl. Privilege Log* at 3. The entry is not privileged because it does not concern legal advice; rather, it concerns claims adjusting activities. The entry is not work product because it predates the October 23, 2024 denial letter. Finally, this entry is relevant to the asserted claims and defenses in this case. Therefore, Defendant is **ordered** to unredact the remainder of NWM_339 and NWM_892.

The redactions on NWM_340 and NWM_893 are of a couple of lines in another claim adjuster entry from February 27, 2024. The lines contain information regarding Defendant Nationwide's reasons for appointing new claim adjusting counsel. In its privilege log, Defendant simply asserts the privilege applies because the communication is with an attorney (retained to adjust the claim) "regarding [claim adjustment] strategy including [attorney] reassignment." *Def. Suppl. Privilege Log* at 3.

The Court finds that Defendant has not met its burden to establish why this information is privileged. *See Menapace*, 2020 WL 6119962, at *4 (noting that the party asserting the privilege bears the burden of establishing that the privilege applies to a particular communication); *TTI Consumer Power Tools Inc. v. Engineered Plastic Components Inc.*, No. 8:22-cv-04085-JDA, 2024 WL 4274957, at *4 (D.S.C. Sept. 24,

14

2024) (denying request to block inquiry into a former employee's reasons for retaining separate counsel instead of using former employer's counsel in the absence of explanation as to why "reasons for obtaining separate counsel would necessarily implicate the disclosure of privileged communications."); *U.S. ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 245 (D.D.C. 2003) (noting that "the reason an attorney is retained may not be privileged"); *cf. Magida ex rel. Vulcan Detinning Co. v. Cont'l Can Co.*, 12 F.R.D. 74, 77-78 (S.D.N.Y. 1951) (noting uniformity of case law "against allowing any privilege as to the fact of retainer," but expressing an unwillingness to "extend the principle to the actual terms of that retainer."); *but see Riley v. Union Pac. R.R. Co.*, No. CIV-09-155-KEW, 2010 WL 1946286, at *1 (E.D. Okla. May 13, 2010) (noting that "the reason for retention *could* touch upon privileged communications") (emphasis added). Therefore, Defendant is **ordered** to unredact NWM_340 and NWM_893.

    **5.**    **Claim File Entries and Emails, NWM_343, 357-58, 361-63, 365, 896, 910-911, 914-16, 918, 4787-4808, 4847, 4894-95, 4897, 4915-16, 5190, 5269-70, 5291-92, 5351-53, 5518-19, 5533-36, 5568-71, 5583, 5658-60, 5682, 5717, 5732-33, 5745-46, 5768-70, 5796-99, 5805-08, 5962, 5965-66, 5973, 6096-99, 6107, 6115-16, 6532-34, 6545-47, 6608-09, 6620, 6653-54, 6674, 6717-20, 6732, 6733, 9446-48**

Plaintiff's Amended Discovery Dispute Chart identifies the following pages, which purportedly contain improper redactions: NWM_343, 357-58, 361-63, 365, 896, 910-911, 914-16, 918, 4787-4808, 4847, 4894-95, 4897, 4915-16, 5190, 5269-70, 5291-92, 5351-53, 5518-19, 5533-36, 5568-71, 5583, 5658-60, 5682, 5717, 5732-33, 5745-46, 5768-70, 5796-99, 5805-08, 5962, 5965-66, 5973, 6096-99, 6107, 6115-16, 6532-34, 6545-47, 6608-09, 6620, 6653-54, 6674, 6717-20, 6732, 6733, 9446-48. *See Am. Disc. Dispute Chart* at 6-7, 11-16. However, the binder of *in camera* review documents does not contain

these pages. Therefore, the parties are **ordered** to confer to resolve their dispute in a manner that is consistent with the Court's rulings in this Order.

### 6. Entries between Attorney Mitchell and Dyan McDowell, NWM_4874-76, 4919-21, 5313-15, 5357-38, 5625-28, 5673-74, 5686-88

The bottom of page Bates stamped NWM_4874 through page NWM_4875, NWM_5357-38, NWM_5625-26, NWM_5673-74, NWM_5686-87 contain an email thread between Attorney Mitchell and a claim adjuster. The email chain is dated September 4, 2024, and concerns the claim-adjusting status, including dates by which certain expert reports will be complete. Defendant has redacted these pages on grounds of attorney-client privilege, work product, and relevance. *Def. Suppl. Privilege Log* at 6. First, the attorney-client privilege does not apply because the entry does not contain legal advice or a request for legal advice; rather, it solely concerns claims adjusting activities. Second, the emails are not work product because they predate the October 23, 2024 denial letter. Third, the emails are relevant to the claims and defenses. Therefore, Defendant is **ordered** to unredact NWM_4874-75, NWM_5357-38, NWM_5625-26, NWM_5673-74, and NWM_5686-87.

Pages Bates stamped NWM_4876, NWM_4921, and NWM_5315 contain a September 4, 2024 email from Attorney Mitchell to a claim adjuster. The email concerns the scheduling of a medical examination and communications with Plaintiff's counsel. For the same reasons articulated above, this email should not have been redacted on grounds of attorney-client privilege, work product, and relevance. Therefore, Defendant is **ordered** to unredact NWM_4876, NWM_4921, and NWM_5315.

Pages Bates stamped NWM_4919 and NWM_5313 contain a September 4, 2024 email from Attorney Mitchell to a claim adjuster. The email concerns claim adjusting status

and strategy. For the same reasons articulated above, this email should not have been redacted on grounds of attorney-client privilege, work product, and relevance. Therefore, Defendant is **ordered** to unredact NWM_4919 and NWM_5313.

Pages Bates stamped NWM_4920 and NWM_5314 contain a September 4, 2024 email from a claim adjuster to Attorney Mitchell. The email seeks clarification regarding the claim adjusting status. For the same reasons articulated above, this email should not have been redacted on grounds of attorney-client privilege, work product, and relevance. Therefore, Defendant is **ordered** to unredact NWM_4920 and NWM_5314.

### 7. Email from Mark Van Dieren to Attorney Mitchell, NWM_5705

Page Bates stamped NWM_5705 contains an October 18, 2024 email from the claim manager to Attorney Mitchell. It references an attached draft response to Plaintiff's insurance claim and seeks input on the draft. Defendant redacted the portion of the email that seeks input on the draft on grounds of attorney-client privilege, work product, and relevance. *See Def. Suppl. Privilege Log* at 9. Defendant describes the content as, "[c]ommunication with Attorney Ian Mitchell regarding draft response in relation to analysis of underlying settlement and statute of limitations." *Id*. In the Amended Discovery Dispute Chart, Plaintiff argues that the email should be unredacted because "Defendant's attorneys were doing the work of claim adjusters and their records and documentation are discoverable." *Am. Disc. Dispute Chart* at 17. Plaintiff also argues that the email was not prepared in anticipation of litigation. *Id*.

"The mere fact that an attorney is involved in a communication or drafting does not automatically render that communication or document subject to the attorney-client privilege or work-product doctrine." *Lakeshore Vill.*, 2024 WL 5125246, at *8 (citations omitted). Additionally, "general topics of a conversation between an attorney and his or

17

client are not protected." *Id*. at *10. However, specific communications in which legal advice is sought or provided are subject to attorney-client privilege. *See Madera*, 112 P.3d at 690. Here, the redactions are of the claim manager's specific requests for Attorney Mitchell's advice on the draft letter and the potential ramifications of the letter's wording. Therefore, even though the email is relevant to the asserted claims and defenses, the email is appropriately redacted on grounds of attorney-client privilege.

The Court, however, disagrees that the redactions are protected work product. The email was not prepared in anticipation of litigation or for trial; rather, the email was prepared as part of the final claim adjusting phase, prior to the denial letter's issuance. Therefore, this basis for the redactions is rejected.

### 8. Email from Sladjana Maalouf to Attorney Mitchell, NWM_5711-12, 6603

The bottom of page Bates stamped NWM_5711 through the top of NWM_5712 and NWM_6603 consist of a February 27, 2024 email from a claim adjuster to Attorney Mitchell, with other individuals from Attorney Mitchell's law firm and from Nationwide copied. The email's subject line is "Pre-Lit UIM claim 702480-GJ for LEE A MOORER." Defendant has redacted this email on grounds of attorney client privilege, work product, and relevance. *Def. Suppl. Privilege Log* at 9. The privilege log describes the email as a "[c]ommunication . . . regarding analysis and strategy of potential resolution in relation to Plaintiff's demand." *Id*.

The attorney-client privilege does not apply to this email because it does not contain legal advice or a request for legal advice; rather, it solely concerns claim adjusting. Additionally, the email predates the October 23, 2024 denial letter by nearly eight months; therefore, the work product doctrine does not apply. Finally, this email is relevant to the

18

asserted claims and defenses. Therefore, Therefore, Defendant is **ordered** to unredact NWM_5711, NWM_5712, and NWM_6603.

### IV.     Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that Plaintiff's Oral Motion to Compel Production of Unredacted Documents from Defendant Nationwide's Claim File is **GRANTED in part** and **DENIED in part**.

IT IS FURTHER **ORDERED** that Defendant shall produce documents in **unredacted** form consistent with this Order.

IT IS FURTHER **ORDERED** that Defendant shall produce the above-listed unredacted documents **by December 12, 2025.**

IT IS FURTHER **ORDERED** that the parties shall meaningfully confer to resolve their disputes about the redacted documents that were not provided to the Court for *in camera* review but are identified in Section III(B)(5) of this Order and in Plaintiff's Amended Discovery Dispute Chart. The conferral shall occur **by December 12, 2025.**

Dated: November 28, 2025                              BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge